IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

POTOMAC CONSTRUCTION
INDUSTRIES, INC., et al.

Debtors.

Case No. 3:11-bk-00855
(Chapter 11)
Jointly Administered

MOTION FOR RELIEF FROM STAY
or alternatively
FOR ADEQUATE PROTECTION PAYMENTS

Comes now CNB Bank, Inc. ("CNB"), by its counsel, respectfully before this Honorable Court to move for relief from the automatic stay in this case pursuant to 11 U.S.C. §362 and LR BK P 4.40, as it relates to certain tangible, personal property belonging to the Debtors which CNB holds as collateral for loan guaranty agreements made by the Debtors. In the alternative, CNB moves for the Court to ORDER the Debtors to make adequate protection payments to CNB. In support of the Motion, CNB asserts as follows:

1. The term "Debtors" used herein refer to Potomac Construction Industries, Inc. (also referred to as "Debtor PCI"), Potomac Construction Equities, LLC (also referred to as "Debtor PCE"), and Potomac Construction Leasing, LLC (also referred to as "Debtor PCL").

2. The Debtors initiated a Chapter 11 bankruptcy case by filing a Petition with this Court on the 4th day of May, 2011.

3. Pursuant to this Court's ORDER (Docket #33), these three cases for the three Debtors are being jointly administered.

4. On or about the 22nd day of December, 2009, CNB made a loan to John F. Abbruzzese, Joanna M. Abbruzzese, and Michael J. Abbruzzese ("the Abbruzzeses") in the amount of $200,000.00. The loan was evidenced by a promissory note (the "Note") calling for the principal sum of $200,000.00 to be repaid by the Abbruzzeses, with interest in six months from the date of its making. A copy of the Note is appended hereto as Exhibit #1.

5. The Abbruzzeses are officers and principals of the Debtors.

6. Upon information and belief, the purpose of the loan was for the Abbruzzeses to obtain money to infuse in the Debtors' businesses.

7. Payment of the Note was guaranteed by each of the Debtors under three loan guaranty agreements, copies of which are appended hereto as Exhibits #2, #3, and #4, respectively.

8. Payment of the Note, and of the Debtors' guarantees of the Note, was secured by security agreements made by each of the Debtors. Copes of the three security agreements are appended hereto as Exhibits #5, #6, and #7, respectively.

9. CNB's security interest in each of the various vehicles and items of personal property was perfected with the recordation of CNB's lien on the title to each of the vehicles which carries a title issued by the W.Va. Division of Motor Vehicles and with a UCC financing statement as to the items which do not have titles issued by the

W.Va. Division of Motor Vehicles. Copies of the titles and UCC financing statements, evidencing perfection of the security interest of CNB in said items, are attached hereto collectively as Exhibit #8 (in multiple parts).

10. The Abbruzzeses note (the "Note") has been renewed, most recently on December 22, 2010 (the "Renewal Note"), and its maturity date was June 22, 2011. Although the maximum amount of the loan was reduced in the renewal process from $200,000.00, the amount of the original Note, to $185,000.00, the amount set forth in the Renewal Note, both the original Note and the Renewal Note evidence the same indebtedness, which is secured by the guaranty agreements of the Debtors and the security agreements made by the Debtors. A copy of the Renewal Note is appended hereto as Exhibit #9.

11. The Renewal Note is now mature for payment, and it is unpaid.

12. The balance due to CNB on the Renewal Note is $185,000.00, plus accrued interest.

13. Upon information and belief, CNB believes that the value of the collateral securing payment of the Renewal Note and the loan guaranty agreements of the Debtors is less than the amount due to CNB under the Renewal Note, and that accordingly, the Debtors are without equity in the collateral.

14. Upon information and belief, the value of the collateral is declining with the passage of time.

15. The amount of the indebtedness is increasing as interest accrues on the unpaid balance thereof.

16. While the collateral might arguably have been useful or necessary to the Debtors in a reorganization of the Debtors under Chapter 11, the Debtors have moved to convert their cases to a Chapter 7 bankruptcy proceeding.

WHEREFORE the undersigned moves that if the case is converted to a Chapter 7 case, the Court will terminate the automatic stay as it relates to the Property and the Movant's remedies under the security agreements to repossess the property encumbered thereby. If the case is not converted, then CNB moves, in the alternative, for adequate protection payments to be ORDERED in a monthly amount reasonably calculated to protect CNB from depreciation in the value of the collateral and increases in the indebtedness. Respectfully submitted.

CNB Bank, Inc.,
by counsel,

/s/ Charles S. Trump IV
Charles S. Trump IV
WV State Bar #3806
Trump & Trump, L.C.
307 Rock Cliff Drive
Martinsburg, WV 25401

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

POTOMAC CONSTRUCTION
INDUSTRIES, INC., et al.

Debtors.

Case No. 3:11-bk-00855
(Chapter 11)
Jointly Administered

CERTIFICATE OF SERVICE

I, Charles S. Trump IV, counsel for CNB Bank, Inc., do hereby certify that I have served a true and complete copy of the foregoing and annexed CNB BANK, INC.'S MOTION FOR RELIEF FROM STAY or alternatively FOR ADEQUATE PROTECTION PAYMENTS on this 28th day of June, 2011, with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all interested parties.

/s/ Charles S. Trump IV
Charles S. Trump IV
WV State Bar #3806
Trump & Trump, L.C.
307 Rock Cliff Drive
Martinsburg, WV 25401